IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
CASE NUMBER:  3:16-cv-3556-JFA

| | |
|---|---|
| STANDARD LIFE AND ACCIDENT, INSURANCE COMPANY<br>                Plaintiff,<br><br>    v.<br><br>STACEY C. P. ROSE AND<br>PALMETTO HEALTH d/b/a PALMETTO HEALTH RICHLAND<br>                Defendants. | **COMPLAINT** |

Plaintiff, STANDARD LIFE AND ACCIDENT INSURANCE COMPANY ("Standard"), hereby files this civil action complaint, and in support thereof, avers as follows:

1. This is an action to rescind a limited benefit accident and sickness insurance policy issued by STANDARD to STACEY C. P. ROSE ("Rose") and for a declaratory judgment under 28 U.S.C. § 2201 determining that no policy benefits are payable by Standard to medical providers, including PALMETTO HEALTH – RICHLAND ("Palmetto"), who provided services to ROSE.

2. Based upon representations made by ROSE in his application, STANDARD issued Policy 83F029002, which was a limited benefit accident and insurance policy, insuring ROSE ("Policy"). The Policy had an effective date of November 4, 2014.

3. Upon information and belief, Rose made misrepresentations in his application to Standard with the actual intent to deceive Standard into issuing the Policy. In the alternative, upon information and belief, Rose made misstatements in his application for insurance which materially affected Standard's acceptance of the risk or the hazards assumed by Standard. The

- 2 -

fraudulent and/or material misrepresentations which were made regarding Rose's medical history, lifestyle history, and/or other matters were material to the issuance of the Policy and deprived Standard of an accurate picture of the applicant for underwriting purposes.

4. Upon information and belief, Rose knew the statements were false at the time they were made.

5. Upon information and belief, the statements were material to the risk.

6. Standard relied upon the statements in issuing the policy at the quoted premium.

7. Upon information and belief, Rose made the statements with the intent to deceive Standard so that Standard would issue the policy at the quoted premium.

8. Had Standard known the truth about Rose, including, *inter alia,* the truth about his medical and lifestyle history, it would have declined to issue the Policy. Standard thus seeks a declaration that the Policy is void or voidable *ab initio* due to material misrepresentations in the application and the Policy is rescinded as of its issue date.

9. Further, Standard seeks a declaration that no policy benefits are payable to Palmetto because the Policy is void *ab initio*.

10. Standard tenders the premiums paid and intends to seek an order to deposit such premiums into the Court's registry pending resolution of this case or further order from the Court.

11. Alternatively, should the Policy not be declared void or voidable, Standard seeks a declaration that no policy benefits are payable due to exclusions or limitations within the Policy. An accurate, redacted copy of the policy is attached hereto as Exhibit A to the Complaint. Standard hereby incorporates the policy in its entirety for all of its terms and conditions.

## PARTIES

12. Plaintiff, Standard, is a Texas insurance company with its principal place of business located in the State of Texas and is authorized to do business in the State of South Carolina.

13. Defendant Stacey C. P. Rose is the insured and record owner of the Policy. Upon information and belief, Rose is a resident and citizen of the State of South Carolina, County of Richland who may be served with process at 324 Riley, Columbia, South Carolina, or wherever he may be found.

14. Defendant Palmetto Health is a hospital system which was formed in 1998 when Richland Memorial Hospital merged with Baptist Healthcare System of South Carolina. Palmetto Health Richland is a regional hospital within the Palmetto Health system which is located at 5 Richland Medical Park Drive, Columbia, South Carolina, 29203. Palmetto may be served by serving its registered agent Charles D. Beaman, Jr. at 1301 Taylor Street, Columbia, South Carolina 29201.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Standard and the defendants.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to each of the claims occurred in this district and division and one or more defendant is a resident of this district and division.

**FACTUAL BACKGROUND**

A. **Procurement of the Policy**

17.  Stacey C. P. Rose submitted an application to Standard seeking an individual limited benefit accident and sickness insurance policy. Rose submitted a "clean" application which disclosed no existing medical or personal history which would cause Standard to decline the application or to rate the application up or charge a different premium for the coverage sought. Rose was 21 years old at the time of the application.

18.  Among other items, each application requested information about the following:

- Residence
- Occupation
- Other insurance currently in force
- Intent to replace or change existing insurance
- Lifestyle questions, including his participation in certain activities
- Adverse driving history, such as suspensions, traffic violations, DWI/DUI/OUIs
- Arrest history
- Medical history information, past and present

19.  Upon information and belief, the answers given in the application listed above to one or more of those areas of inquiry were false and/or misleading. Upon information and belief, after reasonable opportunity for discovery, additional misrepresentations may be discovered.

20.  Upon information and belief, Rose knew that one or more of the statements were false, misleading or incomplete.

21.  Upon information and belief, Rose made the false or misleading statements with the intent that Standard would issue the policy in reliance thereon.

22.  The application contained agreements and acknowledgements that, in relevant part, read as follows:

- I have personally completed and reviewed all of my answers to the questions in this Application and represent that all information I have provided is true, complete and correctly recorded. I understand that this information will be used to determine each person's eligibility for coverage under the Policy and any false statement or misrepresentation may result in loss of coverage or claim denial.

- The Applicant must be eligible based on the Company's rules in effect on the date of Application and on the Policy Effective Date.

- I understand that no agent or producer can accept risks, modify policies or waive any rights or requirements of the Company.

23.     Therefore, in completing the application, Rose knew he was required to provide truthful, accurate, and honest responses to the questions presented. Furthermore, Rose knew that Standard would rely upon the statements recorded on the application in determining whether to issue the Policy.

24.     Based upon Rose's answers to the questions on the application, Standard issued Policy 83F029002 to Rose with an effective date of November 4, 2014.

25.     Premium payments were forwarded to Standard by pre-authorized checks or bank drafts.

26.     The Policy was not in force for a period of two years as Rose cancelled the Policy effective December 4, 2015.

**B. Exclusions and Limitations in the Policy**

27.     The Policy was a limited benefit policy, as described in the Schedule of Benefits.

28.     The Policy contained Exclusions and Limitations to coverage for which no coverage would be provided and no benefits would be paid for the specifically identified events. For example, the Policy excludes "any loss resulting in whole or in part from, or contributed to, or as a natural and probable consequence of any of the following:

>       …
>
>       6. The Covered Person's: a) voluntary use of illegal drugs; b) the intentional taking of over the counter medication not in

accordance with recommended dosage and warning instructions; and c) intentional misuses of prescription drugs;

   7.  The Covered Person's commission of or attempt to commit a felony;

   …

   9. Services and supplies which are not Medically Necessary to treat a covered loss…"

### C. Events Leading to Rose's Medical Treatment

29. Upon information and belief, Rose began staying with friends in the Lexington County area in late April to early May 2015.  During this period, he was using drugs, such as amphetamines and methadone, which he obtained from others.   Upon information and belief, the drugs he was using were not prescribed for him nor were they obtained legally.

30. On or about May 4, 2015, Rose left his friends' place and ran to a neighboring house.  Rose was shot by the homeowner when Rose appeared to be trying to enter the residence which was not his own.   The Lexington County Sheriff's Department investigated the scene as a possible burglary in progress. Upon information and belief, Rose had a knife in his possession when he arrived at the neighboring house. Rose was transported to Palmetto Health Richland for treatment; he was unresponsive upon arrival.

31. Medical records from his treatment at Palmetto reflect lifestyle and/or medical information not disclosed to Standard in Rose's application.

32.  Rose was scheduled to be released from the hospital on June 19, 2015, after which he was to be treated by home health.  Upon information and belief, Rose's room and belongings were searched the night before he was to be released and he was found to have medications in his room and bag which were not prescribed for him.

33.  Rather than discharge him to home, the hospital cancelled his home health care and kept him in the hospital until his discharge on July 17, 2015.

34. Palmetto has billed in excess of $700,000 for treating Rose. Palmetto's submitted bill includes charges for the period of June 19, 2015 – July 17, 2015.

## COUNT I

## DECLARATORY JUDGMENT – RESCISSION OF ROSE POLICY

35. Standard hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

36. Upon information and belief, Rose knowingly made misrepresentations in his application with the intent to deceive Standard into issuing the Policy and the misrepresentations were material to Standard's assumption of the risk. Alternatively, the misrepresentations materially affected Standard's acceptance of the risk and/or the hazards assumed by it.

37. Standard is entitled to a judicial declaration that Rose Policy is void *ab initio* or voidable due to the material misrepresentations made in Rose's application and that no policy benefits are payable or due to Palmetto.

## COUNT II

## DECLARATORY JUDGMENT – NO BENEFITS ARE PAYABLE BECAUSE THE POLICY EXCLUDES THE LOSSES FROM COVERAGE

38. Standard hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

39. In the alternative, should the Court find that the Policy is not void or voidable *ab initio*, Standard seeks a declaration that no benefits are due because the losses, and/or the charges for his treatment, are excluded from coverage.

40. The Policy contained Exclusions and Limitations to coverage for which no coverage would be provided and no benefits would be paid for the specifically identified events. For example, the Policy excludes "any loss resulting in whole or in part from, or contributed to, or as a natural and probable consequence of any of the following:

> …
>
> 6. The Covered Person's: a) voluntary use of illegal drugs; b) the intentional taking of over the counter medication not in accordance with recommended dosage and warning instructions; and c) intentional misuses of prescription drugs;
>
> 7. The Covered Person's commission of or attempt to commit a felony;
>
> …
>
> 9. Services and supplies which are not Medically Necessary to treat a covered loss…"

41. Upon information and belief, in the hours preceding his injury, Rose was voluntarily using illegal drugs and/or intentionally misusing prescription drugs. He was shot while attempting to enter a household which was not his own.

42. Rose's losses are excluded from coverage under the Policy and Standard is entitled to a judicial declaration that no benefits are payable under subsection 6 of the Exclusions and Limitations section of the Policy because the losses resulted, in whole or in part, from Rose's actions while under the influence of drugs.

43. In the alternative, Rose's losses are excluded from coverage under the Policy and Standard is entitled to a judicial declaration that no benefits are payable under subsection 7 of the Exclusions and Limitations section of the Policy because the losses resulted, in whole or in part, from Rose's actions while Rose was in the commission of or attempting to commit a felony.

44. In addition, any charges by Palmetto for the period June 19, 2015 – July 17, 2015 are not covered as Rose's continued hospitalization was not medically necessary. Rose was scheduled to be released from the hospital to his mother's home where he was to be followed by Home Health Care. Had his physicians believed it medically necessary for Rose to continue to be hospitalized, Palmetto would not have been preparing to send Rose home to be treated by Home

Health. Palmetto's discovery of the medications in Rose's room and belongings do not justify his continued confinement in the facility and he should have been released. Upon information and belief, Rose's hospital confinement from June 19 – July 17 was not medically necessary.

45. Standard is entitled to a judicial declaration that no benefits are payable for Rose's medical treatment or, in the alternative, that Standard is not obligated to pay Palmetto for Rose's confinement from June 19 – July 17.

## COUNT III

## MISREPRESENTATION

46. Standard hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

47. Rose made statements of material fact to Standard in connection with his application with Standard whereby they agreed affirmatively represented facts pertaining to the following:

- Medical history
- Lifestyle history

The statements were made with the intent to deceive, were material to the acceptance of the risk and issuance of the Policy. Upon information and belief, Rose's statements were material misrepresentations.

48. Upon information and belief, Rose acted fraudulently in making the material misrepresentations and/or in concealing material facts from Standard in connection with the Policy. Further, upon information and belief, Rose knew or should have known that the aforesaid statements were false and that the concealed information needed to be disclosed to Standard.

49. Upon information and belief, Rose made these false statements and/or concealed material facts intending or expecting to induce Standard into entering the contracts with him.

50. Standard relied upon the misrepresentations by issuing the policy at the stated premium.

51. As a direct, actual and proximate result of the misrepresentations made by Rose, Standard has sustained damages.

## COUNT IV

## FRAUDULENT INDUCEMENT

52. Standard hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

53. As alleged herein, upon information and belief, Rose misrepresented material facts to, and/or concealed material information from, Standard in connection with the Rose application.

54. Upon information and belief, these statements by Rose were knowingly, intentionally, and/or purposefully false.

55. Upon information and belief, Rose knowingly, intentionally, and/or purposefully made these statements intending to induce Standard' reliance upon them.

56. Standard justifiably relied on the statements of Rose and, upon information and belief, was fraudulently induced into entering into issuing the Rose Policy.

57. As a direct, actual and proximate result of the fraudulent inducement by Rose, Standard has sustained damages.

## COUNT V

## FRAUD

58.     Standard hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

59.     Upon information and belief, Rose made fraudulent misrepresentations regarding, among other things, Rose's medical and lifestyle history, with the intention that Standard would rely on these misrepresentations in issuing the Rose Policy.

60.     Each of the aforesaid fraudulent misrepresentations was material to Standard's decision to issue the Rose Policy, and Standard justifiably relied on these fraudulent misrepresentations in issuing the Rose Policy.  Indeed, Standard would not have issued the Rose Policy had it known the true facts surrounding it.

61.     Standard has incurred substantial damages as a result of the wrongful conduct of Rose, including, among other things, costs and expenses associated with the issuance of the Rose Policy.

62.     Standard is also entitled to an award of damages based on the conduct of Rose, as described herein.

## RELIEF REQUESTED

WHEREFORE, Standard respectfully requests the entry of an Order by this Court as follows:

A.     Declaring the Rose Policy void or voidable *ab initio* due to fraudulent misrepresentations in the application for the Rose Policy;

B.     Declaring that no benefits are payable under the due the nature in which the Rose Policy was procured;

C.  Alternatively, declaring that Rose's losses are excluded, in whole or in part, under the terms of the Policy;

E.  costs; and

G.  An award of such further relief at law or in equity as this Court deems appropriate.

Dated:  November 3, 2016

Respectfully submitted,

MURPHY & GRANTLAND, P.A.

s/Wesley B. Sawyer, Esquire_____
Anthony W. Livoti, Esquire
Fed. Bar No. 06952
Wesley B. Sawyer, Esquire
Fed. Bar No. 11244
Murphy & Grantland, P.A.
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100
Attorneys for Plaintiff
*Attorneys for Plaintiff, Standard Life and Accident Insurance Company*